**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 Case |
| ) | |
| NEWBERRY BAKERS, INC. ) | Case No. 17-44189-RFN-11 |
| ) | |
| Debtor. ) | |
| ) | |

## CHAPTER 11 PLAN FOR NEWBERRY BAKERS, INC.

Jeff P. Prostok
State Bar No. 16352500
Laurie Dahl Rea
State Bar No. 00796150
FORSHEY & PROSTOK LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
lrea@forsheyprostok.com

ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION

DATED: May 11, 2018
Fort Worth, Texas

## ARTICLE I.
## DEFINITIONS

A.    <u>Defined Terms</u>. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "<u>Administrative Bar Date</u>" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 3.01(c) of the Plan.

1.02.    "<u>Administrative Expense</u>" means any cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.03.    "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.04.    "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtor through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

1.05.    "<u>Avoidance Action</u>" means a cause of action assertable by the Debtor pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtor's Schedules, including in response to Question 3 to the statement of financial affairs.

1.06.    "<u>Ballot</u>" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.07.    "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.08.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over all or any part of the Chapter 11 Case.

1.09.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including applicable local rules of the Bankruptcy Court.

1.10.    "Beneficiary" means any Person that is a holder of an Allowed Claim entitled to receive Distributions from the Liquidating Trust pursuant to the Plan.

1.11.    "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.12.    "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.13.    "Chapter 11 Case" means the above captioned and numbered reorganization case of the Debtor under Chapter 11 of the Bankruptcy Code.

1.14.    "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.15.    "Claimant" means the holder of a Claim.

1.16.    "Class" means a class of Claims or Interests as described in the Plan.

1.17.    "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.18.    "Confirmation Date" means the date of entry of the Confirmation Order.

1.19.    "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.20.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.21.    "Contested," when used with respect to a Claim, means a Claim against the Debtor that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or any Claim whether scheduled or filed as a proof of Claim as to which an objection has been or may be timely filed and has not

been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.22. "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.23. "Debtor" means Newberry Bakers, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 Case.

1.24. "Disallowed," when used with respect to all or any part of a Claim or Equity Interest, means that portion of a Claim or Equity Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.25. "Disclosure Statement" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.26. "Distribution" means any payment or other disbursement of property pursuant to the Plan.

1.27. "Effective Date" means the first Business Day which is thirty (30) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least thirty (30) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XII below are satisfied.

1.28. "Estate" shall refer to the bankruptcy estate of the Debtor in this Bankruptcy Case.

1.29. "Estate Claims" shall include all claims and causes of action held by the Estate, including without limitation all Avoidance Actions, and all claims and causes of action held by the Estate against Howard Anders, Louise H. Rogers, Joseph Z. Ornelas, Bake One, the Estate of Mike Robertson, Chase Robertson, Robertson Global Credit LLC, Robertson Wealth Management, and affiliated persons or entities.

1.30. "Estate Contract" shall include all contracts or agreements to which the Estate is a party or beneficiary.

1.31. "Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Estate against any Person, including but not limited to any Creditor.

1.32. "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.33. "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.34. "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.35. "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.36. "General Unsecured Claim" means any Claim against the Debtor that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.37. "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.38. "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.39. "Interests" means any equity or stock ownership interest in the Debtor.

1.40. "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor contemplated by section 101(37) of the Bankruptcy Code.

1.41. "Liquidating Trust" means the trust established pursuant to the Liquidating Trust Agreement for the purpose of liquidating and distributing the Liquidating Trust Assets to the Beneficiaries.

1.42. "Liquidating Trust Agreement" means that certain Liquidating Trust Agreement to be filed as a Plan Supplement, establishing the Liquidating Trust and providing for liquidation and distribution of the Liquidating Trust Assets as provided in Article VII of this Plan.

1.43. "Liquidating Trust Assets" means, collectively, the Remaining Assets.

1.44. "Liquidating Trustee" means the individual named in the Liquidating Trust Agreement that will be filed as a Plan Supplement, or such other individual as may be approved by the Bankruptcy Court to serve as the trustee under the Liquidating Trust Agreement.

1.45. "Net Liquidating Trust Assets" means the portion of the Liquidating Trust Assets available for distribution to holders of Allowed Claims, excluding any Reserves for Contested Claims, operating expenses of the Liquidating Trustee, or otherwise.

1.46. "Objection" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.47. "Objection Deadline" shall mean the later of (a) one hundred eighty (180) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, one hundred eighty (180) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.48. "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.49. "Petition Date" means October 13, 2017.

1.50. "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.51. "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court in accordance with ARTICLE ID of the Plan.

1.52. "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.53. "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.54. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.55. "Pro Rata Share" means, as to the holder of a specific Claim, the ration that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.56. "Rejected Leases and Contracts" means all Unexpired Leases and Executory Contracts of the Debtor.

1.57. "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.58. "Remaining Assets" means all Assets remaining with the Debtor after the Sale approved by the Sale Order. The Remaining Assets include accounts receivable (if any), Estate Claims, Estate Defenses, Estate Insurance, intellectual property associated with the Debtor's name, and any other Assets not transferred as part of the Sale. All Remaining Assets will be transferred to the Liquidating Trust on the Effective Date.

1.59. "Reserve" or "Reserves" means any reserves set aside by the Liquidating Trustee pursuant to this Plan or the Liquidating Trust Agreement in order to pay any Trust Expenses or fund any Distribution or payment pursuant to the Plan.

1.60. "Sale" means the sale of substantially all of the Debtor's Assets to Mark Martin or his assignee, which closed on or about April 30, 2018.

1.61. "Sale Order" means the court order entered on April 27, 2018 approving the Sale.

1.62. "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.63. "Secured Claim" means (a) a Claim secured by a lien on any Remaining Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.64. "Secured Creditor" means the holder of a Secured Claim.

1.65. "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.66. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.67. "Trust Expenses" means expenses incurred by the Liquidating Trustee in connection with the administration of the Liquidating Trust including without limitation the fees of the Liquidating Trustee, fees and expenses of Trust Professionals, and any cost or expenses which the Liquidating Trustee believes to be necessary or appropriate to the administration of the Liquidating Trust.

1.68. "Trust Professionals" includes all professionals retained by the Liquidating Trustee including, without limitation, legal counsel, accountants, and such other advisors or professionals as the Liquidating Trustee may wish to retain.

1.69. "Unclaimed Property" means any cash, Distribution, or any other property of the Debtor unclaimed for a period of one (1) year after the applicable distribution date.

1.70. "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

B.    Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.    Other Terms. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise,

a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.    <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

2.01.    The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Secured Claim of Gulf Coast
> Class 2 – Secured Claims of Larry Bush and Joseph Hegyesi
> Class 3 – Secured Claims of Hitachi dba Creekridge Capital
> Class 4 – Priority Non-Tax Claims
> Class 5 – General Unsecured Claims
> Class 6 – Interests

2.02.    <u>Impaired Classes of Claims and Interests</u>.  Class 1 through 5 are Impaired.

2.03.    <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

**ARTICLE III.**
**TREATMENT OF UNCLASSIFIED CLAIMS**

3.01.    <u>Administrative Expenses</u>

(a)    The Liquidating Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost or as may be agreed to in writing by such Administrative Expense Creditor and the Liquidating Trustee, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("<u>Ordinary Course Claims</u>").  The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Liquidating Trustee may move the Bankruptcy Court to apply the provisions of Article X below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through this Bankruptcy Case.

(b)      Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Liquidating Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)      Unless the Bankruptcy Court orders to the contrary or the Liquidating Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Liquidating Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred from receiving any Distribution through the Liquidating Trust.

(d)      A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.01(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)      The procedures contained in subsections 3.01(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.01(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Liquidating Trustee without necessity of application to or order by the Bankruptcy Court.

(f)      If the Liquidating Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.02.   Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive (a) regular installment payments in Cash, of a total value, as of the Effective Date of the Plan, over a period of no more than five (5) years from the Petition Date in an amount equal to the principal amount of such Allowed Priority Tax Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Liquidating Trustee.

3.03.   Trustee's Fees. The Liquidating Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the Confirmation Date

shall be paid in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Liquidating Trustee shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Case is closed. The Liquidating Trustee shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Case remains open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   Class 1 – Secured Claim of Gulf Coast Bank & Trust. If it is determined to be the first lienholder as to its remaining Collateral, Class 1 shall receive deferred Cash payments totaling the value of its remaining Collateral or the Debtor shall surrender the Collateral that secures the Claim, to the extent such Collateral was not previously surrendered. Class 1 is Impaired. The holder of the Class 1 Claim is entitled to vote on the Plan.

4.02.   Class 2 –Secured Claims of Larry Bush and Joseph Hegyesi. If they are determined to be the first lienholders as to their remaining Collateral, Class 2 shall receive deferred Cash payments totaling the value of their remaining Collateral or the Debtor shall surrender the Collateral that secures the Claim, to the extent such Collateral was not previously surrendered. Class 2 is Impaired. Holders of Class 2 Claims are entitled to vote on the Plan.

4.03.   Class 3 – Secured Claim of Hitachi Capital America Corp. d/b/a Creekridge Capital—Class 3 shall be entitled to retain its Collateral, which is a deposit of $4,031.65 currently held by Hitachi Capital America Corp. d/b/a Creekridge Capital.  The remainder of Hitachi Capital America Corp. d/b/a Creekridge Capital's Claim will be treated as provided in Class 5.  Class 3 is Impaired.  The holders of the Class 3 Claim is entitled to vote on the Plan.

4.04.   Class 4 – Priority Non-Tax Claims. Each holder of an Allowed Priority Non-Tax Claim shall receive (a) if they have accepted the Plan, deferred Cash payments of a value, as of the Effective Date of the Plan, equal to the value of the Allowed amount of such Priority Non-Tax Claim; (b) if they have not accepted the Plan, one Cash payment in an amount equal to the amount of such Allowed Priority Non-Tax Claim, or (c) regardless of acceptance or rejection of the Plan, such other treatment as may be agreed to in writing by the holder of the Priority Non-Tax Claim.  Class 4 is impaired.  Holders of Class 4 Claims are entitled to vote on the Plan.

4.05.   Class 5 – General Unsecured Claims. Each holder of an Allowed General Unsecured Claim shall receive a Pro Rata Share of the Net Liquidating Trust Assets after the satisfaction of, or allocation of an appropriate Reserve for, the following: (i) Allowed Administrative Expense Claims, (ii) Allowed Priority Tax Claims, (iii) Allowed Claims in Classes 1 through 4, and (iv) Trust Expenses.  The timing of the distribution(s) of the Net Liquidating Trust Assets shall be at the discretion of the Liquidating Trustee except to the extent limited by the express terms of the Plan, the Liquidating Trust Agreement, or applicable law.  Class 5 is Impaired.  Holders of Class 5 Claims are entitled to vote on the Plan.

4.06.   Class 6 – Interests. All Interests in the Debtor shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 6 is Impaired.  Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF PLAN

5.01.    Classes Entitled to Vote.  Creditors in Classes 1, 2, 3, 4 and 5 are entitled to vote and shall vote separately to accept or reject the Plan.  Interest holders in Class 5 are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

5.02.    Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.03.    Cramdown. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01.    Liquidating Trust.  The Liquidating Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Liquidating Trust Agreement.  The Debtor and the Estate shall be the settlor of the Liquidating Trust.

6.02.    Transfer of Remaining Assets.  As of the Effective Date, all Remaining Assets shall be transferred from the Debtor to the Liquidating Trust.  After the Effective Date, the Liquidating Trustee may still abandon any Liquidating Trust Assets which are burdensome or have no or inconsequential value to the Liquidating Trust.  The Remaining Assets shall be transferred to, and vested in, the Liquidating Trust free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

6.03.    Assumption of Obligation to Make Distributions.  The Liquidating Trustee shall be deemed to have assumed the obligation to make all Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

6.04.    Actions by the Debtor and the Liquidating Trustee to Implement Plan.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Liquidating Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (i) all transfers of Remaining Assets, including to the Liquidating Trustee that are to occur pursuant to the Plan; (ii) the cancellation of Interests and the winding up and dissolution of the Debtor; (iii) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (iv) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.05.    Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (i) any Person directly affected by the relief sought in the pleading, (ii) the

U.S. Trustee, (iii) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (iv) the Liquidating Trustee through legal counsel.

6.06.    Section 505 Powers.  All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Trustee as of the Effective Date.

6.07.    Section 510(c) Powers.  All rights and powers to seek or exercise any right or remedy of Equitable Subordination or are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Trustee as of the Effective Date as an Estate Defense.

6.08.    Section 506(c) Powers.  The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Liquidating Trustee.

6.09.    Plan Injunction.  The Liquidating Trustee shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

6.10.    Cancellation of Interests.  Except as otherwise specifically provided herein, upon the Effective Date: (i) all Interests in the Debtor shall be cancelled; (ii) all obligations or debts of, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtor relating to the Interests in any of their respective formation documents, including the Debtor's articles of incorporation and bylaws.  Holders of such cancelled Interests are not beneficiaries of the Liquidating Trust.

6.11.    Dissolution of Debtor.  The Liquidating Trustee shall be responsible for the winding up and dissolution of the Debtor which shall be undertaken as soon as practicable after the Effective Date.  The Liquidating Trustee may retain such professionals, consultants or advisors as may be reasonably necessary to seasonably accomplish this task, and all such expenses attributable to the winding up and dissolution of the Debtor shall be treated as Trust Expenses.

## ARTICLE VII.
## THE LIQUIDATING TRUST.

7.01.    Creation of Liquidating Trust.  On the Effective Date, the Liquidating Trust shall be created pursuant to the Liquidating Trust Agreement which shall be executed on behalf of the Debtor and by the Liquidating Trustee to accept the appointment.  The Liquidating Trust Agreement shall be filed as a Plan Supplement.  The Liquidating Trust shall not terminate upon the death or incapacity of the Trustee and shall continue until its termination in accordance with the terms of this Plan and the Liquidating Trust Agreement.  Reference is here made to the Liquidating Trust Agreement for all purposes which shall constitute an integral part of the Plan.

7.02.    Compensation of Liquidating Trustee.  The Liquidating Trustee shall be compensated from the Liquidating Trust Assets in the manner set forth in the Liquidating Trust Agreement as a Trust Expense.  The Liquidating Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

7.03. <u>Liquidating Trust Assets</u>. The Debtor and the Estate shall constitute the settlor of the Liquidating Trust. As of the Effective Date, all Remaining Assets shall be transferred to the Liquidating Trust where they will constitute the Liquidating Trust Assets. The Liquidating Trust Assets shall encompass all Remaining Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (i) all Estate Accounts Receivable, (ii) all Estate Claims, (iii) all Estate Defenses, (iv) all rights under Estate Insurance, and (v) all intellectual property rights associated with the Debtor's name. To evidence the transfer of the Remaining Assets to the Liquidating Trust, the Debtor shall, if requested by the Liquidating Trustee, execute on behalf of the Debtor and Estate, as settlors, an Assignment of Liquidating Trust Assets transferring the Liquidating Trust Assets to the Liquidating Trust which shall be included among the Plan Documents.

7.04. <u>Distributions from Liquidating Trust</u>. The Liquidating Trustee shall be responsible for making all Distributions from the Liquidating Trust to holders of Allowed Claims pursuant to this Plan. The priority of Distributions from the Liquidating Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a) <u>First</u>, to satisfy Allowed Administrative Expenses and Allowed Priority Tax Claims in accordance with Article III above, including all U.S. Trustee Fees due and owing as of the Effective Date;

(b) <u>Second</u>, to satisfy holders of Allowed Class 1, Class 2 and Class 3 Secured Claims only to the extent of the value of any Collateral that secures such Secured Claims;

(c) <u>Third</u>, to satisfy holders of Allowed Class 4 Priority Non-Tax Claims;

(d) <u>Fourth</u>, to pay Trust Expenses; and

(e) <u>Fifth</u>, to make Distributions to holders of Allowed Class 5 General Unsecured Claims.

7.05. <u>Reserves</u>. The Liquidating Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, reserves on account of Contested Claims and for Trust Expenses. The Liquidating Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 5 Claims.

Once appropriate Reserves have been established for potential Claims having a higher priority for receiving Distributions under this Plan, the Liquidating Trustee may make Distributions to holders of Allowed Class 5 Claims. The Liquidating Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Liquidating Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Liquidating Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Liquidating Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Liquidating Trust. Subject to any specific deadlines set forth herein, the Liquidating Trustee, shall determine, from time-to-time, in the exercise of the Liquidating Trustee's good faith business judgment: (i) the

amount of Cash available for Distribution to Beneficiaries, (ii) the timing of any Distributions to Beneficiaries, and (iii) the amount and creation of any Reserves for Contested Claims or Trust Expenses.

7.06.   Trust Expenses.  The Liquidating Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court.  Without limiting the generality of the foregoing, the Liquidating Trust may retain, compensate and reimburse Trust Professionals retained by the Liquidating Trust without the necessity of further order of the Bankruptcy Court.  However, the Liquidating Trustee shall be entitled, should the Liquidating Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

7.07.   Powers and Duties of the Liquidating Trustee.  The Liquidating Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Liquidating Trust Agreement which shall be one of the Plan Documents.  The Liquidating Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Liquidating Trust Agreement.

7.08.   Exercise of Liquidating Trustee's Powers.  The Liquidating Trustee shall be entitled to exercise all powers pursuant to this Plan and the Liquidating Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Liquidating Trust Agreement or Confirmation Order.

7.09.   Prosecution and Settlement of Estate Claims.  Upon the Effective Date, the Liquidating Trustee (a) shall automatically be substituted in place of the Debtor as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of adversary proceeding or contested matter pending before the Bankruptcy Court regarding such substitution.  The Liquidating Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Liquidating Trust in the manner set forth in this Plan and the Liquidating Trust Agreement.

7.10.   Exculpation of Liquidating Trustee.  The Liquidating Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Liquidating Trust.  In the performance of its duties, the Liquidating Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment.  However, the Liquidating Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Liquidating Trust Agreement.

7.11.   Indemnity.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee in the manner and to the extent set forth in the Liquidating Trust Agreement.

7.12.   Resignation of Liquidating Trustee.  The Liquidating Trustee may resign as provided in the Liquidating Trust Agreement.

7.13.   Replacement of the Liquidating Trustee.  The Liquidating Trustee may be replaced in the manner and on the terms as set forth in the Liquidating Trust Agreement.

7.14.   Reliance by Liquidating Trustee.  In the performance of the duties pursuant to this Plan, the Liquidating Trustee may rely upon any document or instrument which the

Liquidating Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

7.15.  Plan Injunction.  The Liquidating Trustee and Liquidating Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

7.16.  Tax Treatment.  The Liquidating Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.  The Liquidating Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Liquidating Trust Assets, and make timely Distributions to Beneficiaries of the Liquidating Trust, and shall not unduly prolong its duration.

7.17.  Transfer of Claims.  Holders of Allowed Claims against the Liquidating Trust shall not receive any certificate or other document to evidence their beneficial interest in the Liquidating Trust.  The transfer of Claims after the Effective Date is subject to section 8.04 of this Plan.

7.18.  Construction of Liquidating Trust Documents.  This Plan and the Liquidating Trust Agreement shall control over any inconsistent provision of the Disclosure Statement.  The Plan and Confirmation Order shall control over any inconsistent provision of the Liquidating Trust Agreement.  The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Liquidating Trust Agreement or this Plan.

7.19.  Relief from the Bankruptcy Court.  The Liquidating Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Liquidating Trustee deems necessary or appropriate to the performance of its duties on the administration of this Plan or the liquidation and distribution of the Liquidating Trust Assets.

7.20.  Removal for Cause.  The Liquidating Trustee may be removed for cause shown in the manner and on the terms set forth in the Liquidating Trust Agreement.

## ARTICLE VIII.
## SOURCE OF DISTRIBUTIONS

8.01.  Source of Distributions.  All Distributions to be made under this Plan shall be made by the Liquidating Trustee in the manner provided in this Plan, Confirmation Order and the Liquidating Trust Agreement.

8.02.  Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Liquidating Trustee shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Liquidating Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.03. <u>Means of Cash Payment</u>. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.04. <u>Record Date for Distributions</u>. As of the close of business on the Effective Date (the "<u>Distribution Record Date</u>"), the register for Class 1, 2, 3, 4 and 5 Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Liquidating Trustee shall have no obligation to recognize any transfer of any Class 1, 2, 3, 4 or 5 Claims occurring after the Distribution Record Date, and the Liquidating Trustee shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Liquidating Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Class 1, 2, 3, 4 or 5 Claims after the Distribution Record Date, but shall have no obligation to do so.

8.05. <u>Delivery of Distributions</u>. All Distributions, deliveries and payments to the holders of any Allowed Class 1, 2, 3, 4 or 5 Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Liquidating Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Liquidating Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Liquidating Trustee may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Liquidating Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.06. <u>W-9 Forms</u>. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "<u>W-9 Form</u>") to the Liquidating Trustee prior to receiving any Distribution from the Liquidating Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Liquidating Trustee within thirty (30) days of the Effective Date, the Liquidating Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Liquidating Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtor or Liquidating Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Liquidating Trustee within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Liquidating Trust. In the event any holder of an Allowed Claim fails to provide the Liquidating Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Liquidating Trust.

8.07. <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the holder of the

Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Liquidating Trustee may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.08. <u>Cure Period</u>. Except as otherwise set forth herein, the failure by the Liquidating Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Liquidating Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Liquidating Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.09. <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8007.

## ARTICLE IX.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.

9.01. <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Liquidating Trustee, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Liquidating Trust. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Liquidating Trustee who shall have the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor, Estate or Liquidating Trust. All Estate Claims shall be deemed to have been transferred to, and vested in, the Liquidating Trustee as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtor and the Estate hereby specifically reserve and retain the following Estate Claims: all Avoidance Actions, and all claims and causes of action held by the Estate against Howard Anders, Louise H. Rogers, Joseph Z. Ornelas, Bake One, the Estate of Mike Robertson, Chase Robertson, Robertson Global Credit LLC, Robertson Wealth Management, and affiliated persons or entities. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtor are presently aware, and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and

whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be retained and preserved under this Plan to be transitioned to, and vested in the Liquidating Trustee. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

9.02. <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Liquidating Trustee. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Liquidating Trustee as of the Effective Date based on the entry of the Confirmation Order.

9.03. <u>Assertion of Estate Claims and Estate Defenses</u>. The Liquidating Trustee shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Liquidating Trust.

### ARTICLE X.
### PROCEDURES FOR RESOLVING AND TREATING
### CONTESTED AND CONTINGENT CLAIMS

10.01. <u>Claims Listed in Schedules as Disputed</u>. Any Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Liquidating Trustee or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.02. <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Liquidating Trustee shall have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim, including as follows:

(a) From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Liquidating Trustee; and

(b) From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.03. <u>Objection Deadline</u>. All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Liquidating Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Liquidating Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date

shall be of no force and effect and need not be objected to by the Liquidating Trustee. Nothing contained herein shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Objection Deadline.

10.04. <u>Response to Claim Objection</u>. If the Liquidating Trustee files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing. The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Liquidating Trustee shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

10.05. <u>Distributions on Account of Contested Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.06. <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, the Confirmation Order or the Liquidating Trust Agreement shall waive, relinquish, release or impair the Liquidating Trustee's right to object to any Claim.

10.07. <u>Offsets and Defenses</u>. The Liquidating Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Liquidating Trustee against any Claim asserted against the Estate or Liquidating Trustee shall constitute "core" proceedings.

10.08. <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE XI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.01. <u>Assumption and Rejection of Executory Contracts</u>. All Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected by the Debtor upon the Effective Date unless an Executory Contract or Unexpired Lease has been previously rejected pursuant to an

order of the Bankruptcy Court. The Plan shall constitute a motion to reject the Executory Contracts and Unexpired Leases except as stated in this paragraph. However, the Debtor may file a separate motion for the rejection of any Executory Contracts or Unexpired Leases at any time through the Confirmation Date.

11.02. Bar to Rejection Claims. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Liquidating Trust or the Liquidating Trust Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Liquidating Trustee and his counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

11.03. Rejection Claims. Any Rejection Claim not barred by section 11.02 of the Plan shall be classified as a Class 4 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however,* that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtor or the Liquidating Trustee that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or Liquidating Trustee of any objections or defenses to any such Rejection Claim if asserted.

11.04. Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Estate Representative have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

12.01. Conditions to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtor; (b) the Liquidating Trust Agreement has been executed and delivered, (c) the necessary Plan Documents have been executed and delivered, and (d) all other conditions specified by the Debtor have been satisfied.

12.02. Notice of the Effective Date. On the Effective Date, the Liquidating Trustee shall cause to be filed with the Court, and served on all Creditors and parties-in-interest, a notice of the Effective Date.

## ARTICLE XIII.
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

13.01. Discharge. This Plan does not provide for any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code. However, the Plan Injunction shall apply to all holders of Claims and Interests arising or accruing prior to the Effective Date.

13.02.  PLAN INJUNCTION.  THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION."  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR, THE ESTATE OR ANY OF THE ASSETS OR LIQUIDATING TRUST ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:  (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE LIQUIDATING TRUSTEE, LIQUIDATING TRUST, LIQUIDATING TRUST ASSETS, DEBTOR OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE, LIQUIDATING TRUSTEE, LIQUIDATING TRUST, DEBTOR OR LIQUIDATING TRUST ASSETS; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE LIQUIDATING TRUSTEE, LIQUIDATING TRUST OR ANY LIQUIDATING TRUST ASSETS, OR (iii) TAKING ANY ACTION IN RELATION TO THE DEBTOR, ESTATE, LIQUIDATING TRUSTEE, LIQUIDATING TRUST OR THE LIQUIDATING TRUST ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

Notwithstanding anything to the contrary in the Plan or Trust Agreement: (a) third party professionals employed by the Liquidating Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Liquidating Trustee; and (b) any third-party professionals employed by the Liquidating Trustee shall only be entitled to be indemnified by the Liquidating Trust to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction):  (a) releases any Person other than the Liquidating Trustee, Liquidating Trust, Liquidating Trust Assets, Debtor, or the Estate (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties.  Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit.  In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date.  For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the

application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

13.03. <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Liquidating Trustee may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); <u>provided, however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtor without the consent of the Debtor or the Liquidating Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

13.04. <u>Recoupment.</u> Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtor or the Liquidating Trustee unless (a) such holder actually provides notice thereof in writing to the Debtor or the Liquidating Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtor or the Liquidating Trustee have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Liquidating Trustee consents to the requested recoupment. The Debtor and the Liquidating Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor or the Liquidating Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

13.05. <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Liquidating Trust Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Liquidating Trust.

13.06. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor, the Estate and all Remaining Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XIV.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

14.01. <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to this Bankruptcy Case and the Plan, to the full extent allowed or

permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)    To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)    To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)    To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or Liquidating Trust or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets or Liquidating Trust Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)    To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)    To administer Distributions to holders of Allowed Claims as provided herein or in the Liquidating Trust Agreement;

(h)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)    To enforce the Plan Injunction against any Person;

(k)    To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Liquidating Trust Agreement and the transactions required or contemplated pursuant thereto;

(l)    To hear and determine any motion or application which the Liquidating Trustee is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Liquidating Trust Agreement;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)     To enter a Final Decree closing this Bankruptcy Case; and

(p)     To determine any other matter or dispute relating to the Estate, the Assets, the Liquidating Trust or Liquidating Trust Assets, or the administration of the Liquidating Trust Assets and the Distribution thereof.

14.02.  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Bankruptcy Case, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.03.  <u>Non-Material Modifications</u>.  The Liquidating Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Liquidating Trustee may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

14.04.  <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

15.01.  <u>Severability</u>.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Liquidating Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

15.02.  <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>.  The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement,

warranty or representation.  Neither the Debtor nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

15.03.  <u>Waiver</u>.  The Liquidating Trustee shall not be deemed to have waived any right, power or privilege pursuant to the Plan or Liquidating Trust Agreement unless the waiver is in writing and signed by the Liquidating Trustee.  There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Liquidating Trustee, of any right pursuant to the Plan, including the provisions of this anti-waiver section.  The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

15.04.  <u>Notice</u>.  Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)    If to the Liquidating Trustee, notice shall be sent to the Liquidating Trustee and counsel of record for the Liquidating Trustee as provided in the Liquidating Trust Agreement.

(c)    Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Liquidating Trustee of its new address in accordance with the terms of this section.

(d)    Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

15.05.  <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Liquidating Trustee shall comply with such law, rule, regulation, or order; <u>provided, however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Liquidating Trust.

15.06.  <u>Duties to Creditors</u>.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

15.07. <u>Binding Effect</u>. The Plan shall be binding upon, and shall inure to the benefit of the Liquidating Trust, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

15.08. <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

15.09. <u>Payment of Statutory Fees</u>. All accrued U.S. Trustee Fees shall be paid by the Liquidating Trustee as soon as practicable after the Effective Date, and thereafter shall be paid by the Liquidating Trustee as such statutory fees become due and payable.

15.10. <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Liquidating Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.11. <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

15.12. <u>Elections by the Liquidating Trustee</u>. Any right of election or choice granted to the Liquidating Trustee under this Plan may be exercised, at the Liquidating Trustee's election, separately as to each Claim, Creditor or Person.

15.13. <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Remaining Assets transferred to the Liquidating Trust shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

15.14. <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

15.15. <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

15.16. <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Liquidating Trustee, shall serve on all known parties in interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

15.17.  <u>Notice of Entry of Confirmation Order</u>.  Promptly after entry of the Confirmation Order, the Debtor, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

[Remainder of page intentionally left blank.]

Dated:  May 11, 2018.

Respectfully submitted,

NEWBERRY BAKERS, INC.

By:  /s/ William Evans
    William Evans
    CEO

APPROVED:

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Laurie Dahl Rea
State Bar No. 00796150
FORSHEY & PROSTOK LLP
777 Main Street, Suite 1290
Fort Worth, Texas  76102
Telephone:  (817) 877-8855
Facsimile:  (817) 877-4151
jprostok@forsheyprostok.com
lrea@forsheyprostok.com

ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION

L:\JPROSTOK\Newberry Bakers (CH11) #5931\PLan and Disclosure Statement\Plan of Liquidation 5.10.18.docx